| | |
|---|---|
| 1 | KELLI L. SAGER (State Bar No. 120162) |
|   |   kellisager@dwt.com |
| 2 | ERIC M. STAHL (State Bar No. 292637) |
|   |   ericstahl@dwt.com |
| 3 | DIANA PALACIOS (State Bar No. 290923) |
|   |   dianapalacios@dwt.com |
| 4 | DAVIS WRIGHT TREMAINE LLP |
|   | 865 South Figueroa Street, Suite 2400 |
| 5 | Los Angeles, CA 90017-2566 |
|   | Telephone: (213) 633-6800 |
| 6 | Fax: (213) 633-6899 |

Attorneys for Defendants
BLUMHOUSE PRODUCTIONS, LLC,
and JEREMY SLATER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER "CHRIS" WAYNE FILLMORE, an individual, | Case No. **2:16-CV-04348-AB-SS** |
| Plaintiff, | **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS (F.R.C.P. 12(b)(6))** |
| vs. | Hearing Date: May 8, 2017 |
| LIONSGATE FILMS; JASON BLUM individually and/or d/b/a Blumhouse Productions, a proprietorship; JEANETTE BRILL individually and/or d/b/a Blumhouse Productions, a proprietorship; LUKE DAWSON individually; MATTHEW KAPLAN individually and/or d/b/a Chapter One Films, a proprietorship; ROBYN MARSHALL individually and/or d/b/a Chapter One Films, a proprietorship; JIMMY MILLER individually and/or d/b/a Mosaic Management & Production, a proprietorship; RICK OSAKO individually and/or d/b/a Catchlight Films, a proprietorship; JEREMY SLATER, individually; CODY ZWIEG individually; and DOES 1-10 inclusive, | Time: 10:00 a.m. |
| | Courtroom: 7B |
| | [Notice of Motion and Motion to Dismiss; Declaration of Eric M. Stahl With Exs. 1, 3-8, Notice Of Lodging of Ex. 2, Notice Of Manual Filing; and [Proposed] Order Filed Concurrently] |
| Defendants. | |

Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants[1] respectfully request that this Court take judicial notice of the following materials and facts submitted in support of the Defendants' Motion To Dismiss:

**Works at Issue**

1. The manuscript "Lazari Taxa," Ex. 1 to the Declaration of Eric M. Stahl ("Stahl Decl.").
2. The motion picture "The Lazarus Effect," Ex. 2 to the Stahl Decl., which has been concurrently lodged.

**Facts Not Subject to Reasonable Dispute**

3. Lazarus is a biblical figure who, according to the New Testament, was raised from the dead by Jesus.
4. The term "The Lazarus Phenomenon" has been used in medical literature to describe an occurrence in which clinically dead humans demonstrate spontaneous signs of life.
5. The name Lazarus has been used in numerous expressive works regarding death and resurrection.

**Generic Literary Elements**

6. The possibility of resurrection is a common element in religious works.
7. Bringing the dead back to life is a common element in horror, fantasy and science fiction books and movies.
8. Dream sequences are a common narrative device in works of fiction.
9. A character disobeying a superior's orders is a common narrative device in works of fiction.

---

[1] This request is brought on behalf of brought on behalf of Blumhouse Productions, LLC (erroneously identified in the FAC as "Blumhouse Productions, a proprietorship") and Jeremy Slater. As of this date, none of the other defendants has been served properly with the First Amended Complaint, as required by this Court's March 17, 2017 Order.

## I. JUDICIAL NOTICE AND INCORPORATION OF THE WORKS REFERENCED IN THE COMPLAINT

On a motion to dismiss, a court may consider the content of materials referred to in the complaint, even if the plaintiff neglects to attach the materials. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (on Rule 12 motion court may consider "documents incorporated into the complaint by reference"); Knievel v. ESPN, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (Rule 12 motion properly granted by considering web pages referred to in complaint and attached to defendant's motion). As one court explained in an analogous copyright case, when ruling on a Rule 12(b)(6) motion, courts can consider "exhibits submitted with the complaint," as well as "documents which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'" Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)).

Such materials may be introduced through a request for judicial notice pursuant to Federal Rule of Evidence 201. For example, in Campbell v. Walt Disney Co., 718 F. Supp. 2d 1108 (N.D. Cal. 2010), the court granted the defendant's motion to dismiss a copyright claim, holding that the defendant's motion picture, "Cars," was not substantially similar to the plaintiff's screenplay. Id. at 1116. To reach this conclusion, the court took judicial notice of the contents of the film and the screenplay, which were referenced in, but not attached to, the complaint. Id. at 1111 n.3. Similarly, in Sobhani v. @radical.media, Inc., 257 F. Supp. 2d 1234 (C.D. Cal. 2003), the court took judicial notice of the content of the motion picture "Cast Away" where it was the subject of the plaintiff's copyright claim. Id. at 1236 n.1. See also Silas v. Home Box Office, Inc., 201 F. Supp. 3d 1158, 1168 (C.D. Cal. 2016) ("[w]hen specific documents are referenced in a complaint, but not attached to the complaint, a defendant may introduce those documents" on a Rule 12(b)(6) motion); Burnett v. Twentieth Century Fox, 491 F. Supp. 2d 962, 966 (2007) (considering

content of TV show that formed basis of copyright claim but was not attached to complaint); Daly v. Viacom, Inc., 238 F. Supp. 2d 1118, 1121-1122 (N.D. Cal. 2002) (considering video referenced in, but not attached to, complaint); Zella, 529 F. Supp. 2d at 1139 (same).

Here, as in the cited cases, Plaintiff bases his copyright claim on his manuscript "Lazari Taxa," which he references in his First Amended Complaint ("FAC") but does not physically attach to it. He also references Defendants' motion picture "The Lazarus Effect," which he identifies as the allegedly infringing work, but which also was not submitted with the FAC. See FAC ¶¶ 2, 3, 22-24. Because the content of the Film and Manuscript are referenced in the FAC, and Plaintiff necessarily relies on these works as the basis for his copyright claim, these materials are incorporated by reference in the First Amended Complaint and are proper subjects of judicial notice. E.g., Campbell, 718 F. Supp. 2d at 1111 n.3; Sobhani, 257 F. Supp. 2d at 1236 n.1.

## II. THE COURT MAY TAKE JUDICIAL NOTICE OF FACTS THAT ARE NOT SUBJECT TO REASONABLE DISPUTE.

Federal Rule of Evidence 201(b) provides that facts are subject to judicial notice when they are not "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; see also Heusey v. Emmerich, No. CV 14-06810-AB (EX), 2015 WL 12765115, at *4 (C.D. Cal. Apr. 9, 2015) (taking judicial notice of "occupations and lifetimes of historical characters, family trees, historical events, theories commonly-held by historians, and the political atmosphere of the Elizabethan era" because these facts could be "accurately and reasonably determined from sources whose accuracy cannot reasonably be questioned"). Here, the Court should take judicial notice of the facts discussed below.

### A. Lazarus Is a Biblical Figure Who Was Raised from The Dead.

A "court may take judicial notice of a passage in the Bible." <u>Nevius v. Africa Inland Mission Int'l</u>, 511 F. Supp. 2d 114, 119 (D.D.C. 2007); <u>see</u> also <u>Rouser v. White</u>, 630 F. Supp. 2d 1165, 1172 n.1 (E.D. Cal. 2009) (taking judicial notice of parts of the bible). Accordingly, the Court should take judicial notice of the fact that Lazarus is a biblical figure who, according to a passage of the New Testament, was raised from the dead by Jesus. <u>See</u> Stahl Decl., Ex. 3; <u>see</u> also <u>In re Lazarus</u>, 276 F. Supp. 434, 448-49 (C.D. Cal. 1967) ("[t]he Lazarus of the Bible had no control over his death [or] return to life. But here this latter day Lazarus is the master of both his judicial death and his legal resurrection. By his own choice he is asking for the mausoleum of the penitentiary to which the Court is about to commit him; yet he holds the key to the door which he need not but wants to enter. All he has to do is talk.").

### B. The "Lazarus Phenomenon."

The Court should take judicial notice that an occurrence in which clinically dead humans demonstrate spontaneous signs of life has been described as "the Lazarus Phenomenon." <u>See</u> Stahl Decl., Ex. 4. This medical occurrence has been documented, and described with reference to the word "Lazarus," in medical journals, articles, and court testimony. <u>Id.</u>; <u>see</u> also <u>In re Ohio Execution Protocol Litig.</u>, No. 2:11-CV-1016, 2017 WL 378690, at *30 (S.D. Ohio Jan. 26, 2017) (doctor testified "even brain-dead humans have demonstrated spontaneous movement or movement in response to noxious stimuli by sitting up in bed, crossing their arms over their chest, or turning their head, which is referred to as the Lazarus Phenomenon"). The use of the term "the Lazarus Phenomenon" to describe a condition in which the dead appear to come back to life is not subject to reasonable dispute and should be judicially noticed.

### C. The Name "Lazarus" Has Been Used in Innumerable Expressive Works About Death and Resurrection.

The name "Lazarus" has been featured in countless books, movies, and other works about death and resurrection. Examples include, among many others, the following:

"David Bowie's 'Lazarus'": This is a musical about a man who is unable to die. See Stahl Decl., Ex. 5 at 3-32.

"The Lazarus Papers" (2010): This is a movie about a young man who might drop dead at any moment. See Ex. 5 at 4.

The Lazarus Project by Aleksandar Hemon (2009) This is a novel about a man named Lazarus who was shot to death, but his story is retold hundred years later. See id. at 6-9.

Lazarus Series (2013-present): This is a comic book series about synthetic, self-healing warriors who are called Lazarus. See id. at 10-12.

"The Lazarus Man" (1996): This is a short television series about man who pulls himself out of a grave in the South. See id. at 13-16.

The Lazarus War: Legion by Jamie Sawyer (2016): This is a science fiction book about Conrad Harris who has died hundreds of times, and is known as Lazarus. See id. at 17.

Madame Lazarus (2014): This is a short story published in The New Yorker about a dog that dies and is brought back to life. See id. at 18-25.

Moreover, a search for the term "Lazarus" on Amazon.com results in over 17,000 works. The U.S. Copyright Office's online Public Catalog shows 699 works containing the word "Lazarus" in the title. See id. at 26-32.

### III. THIS COURT CAN TAKE JUDICIAL NOTICE OF GENERIC OR COMMON LITERARY ELEMENTS.

Courts frequently take judicial notice of generic elements that are prevalent in creative works. For example, in Zella, 529 F. Supp. 2d at 1129, the court took

judicial notice that "the following elements of a television show are common and prevalent in public works: (a) a host; (b) guest celebrities; (c) an interview; and (d) a cooking segment." Id. The court concluded that judicial notice was proper "because these elements are generally known and can be verified simply by watching television for any length of time." Id. Other courts similarly have taken judicial notice of common elements that appear in creative works. See, e.g., Pelt v. CBS, Inc., No. CV-92-6532 LGB(SHX), 1993 WL 659605, at *6 & n.3 (C.D. Cal. Oct. 25, 1993) (taking judicial notice of fact that nearly every television talk show has elements of a moderator, a topic for discussion and guests, and stating that such common elements therefore do not receive copyright protection); DuckHole Inc. v. NBC Universal Media LLC, No. CV 12-10077 BRO CWX, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013) (taking judicial notice of "common elements of a veterinary hospital which include the setting that contains an operating room, examining room, a lobby, and pets").[2] Here, Defendants ask the Court to take judicial notice that the use of resurrection, dream sequences, and characters disobeying superiors did not originate with Plaintiff's work, but instead have been used as common literary devices in biblical and fictional works.

**A.   Resurrection Is a Common Element in Religious Works**

Works involving resurrection are common and prevalent in religious works. Examples include, among others, the following:

Jesus Christ: The Bible features the story of Jesus resurrecting on the third day after being crucified. See Stahl Decl., Ex. 6, at 1-5.

---

[2] Moreover, this Court may take judicial notice of facts confirmed by IMDb pages. See Klein v. Leis, No. 1:06-CV-164, 2006 WL 1489686, at *1 (S.D. Ohio May 30, 2006) (taking judicial notice "of the fact that the theatrical film Silence of the Lambs (Orion Pictures, 1991) featured a serial murderer character named Hannibal Lector (or Lecter)" as evidenced by the IMDb page), aff'd, 548 F.3d 425 (6th Cir. 2008).

Lazarus: In the Bible, Lazarus is a biblical figure who was raised from the dead by Jesus. See Stahl Decl., Ex. 3.

Dionysus: According to Greek mythology, Dionysus was resurrected by Zeus. See Stahl Decl., Ex. 6 at 7-9.

Quetzalcoatl: In Meso-American mythology, Quetzalcoatl is the god of death and resurrection, who traveled to the underworld and returned back to earth. See id. at 10-12.

Lemminkäinen: In Finish mythology, Lemminkäinen dies while in the underworld and his mother brings him back to life. See id. at 13.

Osiris: An Egyptian god who was brought back to life after his body was torn to pieces. See id. at 14-20.

**B. Bringing the Dead Back to Life Is a Common Element in Horror, Fantasy, and Science Fiction Works.**

Resurrection and reanimation are stock literary devices in horror, fantasy and science fiction. Examples include the following:

Frankenstein: In both the book by Mary Shelley (1818) and the movie adaptation of Frankenstein (1931), Dr. Frankenstein brings a dead man back to life during a thunderstorm. See Stahl Decl., Ex. 7 at 1-5. This story has been recreated into innumerable works, including the remake of Frankenstein (1994), comedies like "Young Frankenstein" (1974), and the more recent remake, Victor Frankenstein (2015). See, e.g., id. at 6-7.

Herbert West, Re-Animator by H.P. Lovecraft (1922): This is a story about a medical student who animates the dead with a serum. See id. at 8-20. This story was adapted into the film "Re-Animator" (1985). Id. at 21-22.

"Pet Sematary" (1983): This is a movie about a boy who is brought back to life after being buried in an ancient burying ground. See id. at 23-24.

"Flatliners" (1990): This is a movie where four medical students die – or flatline – only to be brought back to life with a defibrillator. See id. at 25-26.

7

"The Serpent and the Rainbox" (1988): This is a movie based on the a book by Wade Davis by the same title, where a scientist investigates a voodoo society that uses drugs to turn the dead into zombies. See id. at 27.

"Death Becomes Her" (1992): This is a movie where the main character dies after being pushed down stairs, only to be revived soon thereafter. See id. at 40-42.

"Resurrection" (1980): This movie starts with the main character dying in a car accident, but she then wakes up in a hospital bed. See id. at 43-44.

"Resurrection" (2014): This is a television series where people who had died long ago suddenly come back to life. See id. at 45-46.

Reanimation of the dead is the basis for most zombie movies, including "Night of the Living Dead" (1968), "Dawn of the Dead" (1978), "Day of the Dead" (1985), and "The Land of the Dead" (2005), among many others. See id. at 28-39.

### C. Dream Sequences Are a Common Element in Books and Films.

Dreams are a common literary and film device, and a staple of many fictional works. See, e.g., Wild v. NBC Universal, Inc., 788 F. Supp. 2d 1083, 1104 (C.D. Cal. 2011) (noting both the book Carnival of Souls and the television show "Heroes" both include a dream sequence). Examples include the following:

"Wizard of Oz" (1939) and Wonderful Wizard of Oz (1900): The entire storyline of the Wizard of Oz is a dream of the main character Dorothy. The movie ends with Dorothy waking up in her bed, surrounded by familiar faces. See Stahl Decl., Ex. 8 at 1-2.

"Spellbound" (1945): This is an Alfred Hitchcock movie that contains a dream sequence designed by Salvador Dali. See id. at 3-5.

"8 ½" (1963): This Federico Fellini movie begins with a nightmare dream sequence. See id. at 6-7.

"The Big Lebowski" (1998): The movie contains a famous dream sequence in which the main character Jeffrey Lebowski dreams he flies over Los Angeles and dances. See id. at 8-12

8

REQUEST FOR JUDICIAL NOTICE
4853-3008-1862v.7 0103245-000004

<u>The Iliad</u> by Homer (750 b.c.):  In <u>The Iliad</u>, the Greek king has a dream influenced by Zeus.  <u>See</u> <u>id.</u> at 13-17.

<u>Alice's Adventures in Wonderland</u> by Lewis Carroll (1865):  The storyline of this classic literary work is a dream sequence; the book ends with Alice waking up in her sister's lap.  <u>See</u> <u>id.</u> at 18-20.

<u>Harry Potter and the Order of the Phoenix</u> by J.K. Rowling (2003):  This book contains a dream sequence in which Harry Potter inhabits the body of a snake.  <u>See</u> <u>id.</u> at 21-24.

<u>A Midsummer Night's Dream</u> by William Shakespeare (1595): This play contains several dreams, and ends with a character telling the audience to remember the events as if they were only a dream.  <u>See</u> <u>id.</u> at 25-28.

"Eternal Sunshine of the Spotless Mind" (2004):  Most of this film takes place in the main character's mind.  <u>See</u> <u>id.</u> at 29-30.

"Brazil" (1995):  In this movie, the main character often finds himself dreaming that he is a winged warrior.  <u>See</u> <u>id.</u> at 31-33.

**D.     A Character Disobeying a Superior's Order Is a Common Narrative Device in Works of Fiction.**

The protagonist who disobeys a superior's orders is a trope used in many books, televisions series, and films.  Examples include the following:

"Beverly Hills Cop" (1984): This is a movie about a policeman who conducts unauthorized stings and investigations even after his superior threatens to fire him.  <u>See</u> Stahl Decl., Ex. 9, at 1-3.  The sequels to "Beverly Hills Cop" also have the same premise.  <u>See</u> <u>id.</u> at 4-7.

"Dirty Harry" (1971): This is a movie in which a cop disregards the district attorney's and chief's orders.  <u>See</u> <u>id.</u> at 8-11.

"Die Hard 2" (1990): While the entire Die Hard series involves John McClane not following orders, Die Hard 2 is premised on McClane continuously disobeying the captain's orders.  <u>See</u> <u>id.</u> at 12-17.

Harry Potter and the Order of the Phoenix by J.K. Rowling (2003): In this book, Harry Potter uses magic outside of the school against the rules of Ministry of Magic. See Stahl Decl., Ex. 8 at 21.

"The Breakfast Club" (1985): This is a movie about five students in detention who spend their time doing anything but the assignment and instructions given to them. See Stahl Decl., Ex. 9, at 18-19.

"The Sound of Music" (1965): In this movie, the protagonists escape Austria instead of following the order for Captain Von Trapp to serve in the Third Reich's navy. See id. at 20-21.

The Oedipus Plays by Sophocles (441 b.c.): This is a play that begins with the main characters disobeying an order to not bury their brother Polynices. See id. at 22-28.

"Captain America: The First Avenger" (2011): In this movie, Captain America recues 400 soldiers against the orders of the colonel. See id. at 29-32. In "Captain America: Civil War" (2014), Captain America again disobeys orders to save an old friend. See id. at 33-25

"Top Gun" (1986): Maverick, the main character of the movie, continuously disregards his instructor's orders by flying in an unsafe manner. See id. at 36-37.

"Miss Congeniality" (2000): In this movie, the main character gives up her badge and gun to continue an investigation alone and without her supervisor's approval. See id. at 38-39.

## IV. CONCLUSION

For all the reasons set forth above, Defendants ask this Court to take judicial notice of the following:

1. The contents of the Defendants' motion picture "The Lazarus Effect."
2. The contents of the Plaintiff's manuscript "Lazari Taxa."
3. The fact that Lazarus is a biblical figure who, according to the New Testament, was raised from the dead by Jesus.

REQUEST FOR JUDICIAL NOTICE
4853-3008-1862v.7 0103245-000004

4. The fact that the term "The Lazarus Phenomenon" has been used in medical literature to describe an occurrence in which clinically dead humans demonstrate spontaneous signs of life.

5. The fact that the name Lazarus has been used in numerous expressive works regarding death and resurrection.

6. The fact that the possibility of resurrection is a common element in religious works.

7. The fact that bringing the dead back to life is a common element in horror, fantasy and science fiction books and movies.

8. The fact that dream sequences are a common narrative device in works of fiction.

9. The fact that a character disobeying a superior's orders is a common narrative device in works of fiction.

DATED: April 7, 2017

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ERIC M. STAHL
DIANA PALACIOS

By: _____/s/ Kelli L. Sager_____
        Kelli L. Sager

Attorneys for Defendants
BLUMHOUSE PRODUCTIONS, LLC, and JEREMY SLATER