KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ERIC M. STAHL (State Bar No. 292637)
  ericstahl@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUMHOUSE PRODUCTIONS, LLC;
JASON BLUM; JEREMY SLATER;
LIONS GATE FILMS, INC.;
JEANETTE BRILL; LUKE DAWSON;
ROBYN MARSHALL; JIMMY MILLER;
RICK OSAKO; and CODY ZWIEG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER "CHRIS" WAYNE FILLMORE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>LIONSGATE FILMS; JASON BLUM individually and/or d/b/a Blumhouse Productions, a proprietorship; JEANETTE BRILL individually and/or d/b/a Blumhouse Productions, a proprietorship; LUKE DAWSON individually; MATTHEW KAPLAN individually and/or d/b/a Chapter One Films, a proprietorship; ROBYN MARSHALL individually and/or d/b/a Chapter One Films, a proprietorship; JIMMY MILLER individually and/or d/b/a Mosaic Management & Production, a proprietorship; RICK OSAKO individually and/or d/b/a Catchlight Films, a proprietorship; JEREMY SLATER, individually; CODY ZWIEG individually; and DOES 1-10 inclusive,<br><br>Defendants. | Case No. **2:16-CV-04348-AB-SS**<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (F.R.C.P. 12(b)(6))**<br><br>Hearing Date:   May 8, 2017<br>Time:              10:00 a.m.<br>Courtroom:      7B |

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF ARGUMENT ..........................................................................1

II.     COPYRIGHT INFRINGEMENT CLAIMS ARE SUBJECT TO
        DISMISSAL WITH PREJUDICE ON A RULE 12(B)(6) MOTION. ...........3

III.    PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO
        SHOW DEFENDANTS HAD ACCESS TO HIS WORK. .........................5

IV.     THE WORKS AT ISSUE ARE NOT SUBSTANTIALLY SIMILAR .........8

        A.     Substantial Similarity Requires a Comparison of Extrinsic
               Elements. ....................................................................................8

        B.     A List of Abstract or Random Items Is Inadequate To Establish
               "Substantial Similarity" Between Two Works...................................9

        C.     Plaintiffs' List Fails To Identify Any Protectable Similarities
               Between The Film and The Manuscript. ........................................ 11

V.      CONCLUSION.......................................................................................... 21

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

8th Wonder Entm't, LLC v. Viacom Int'l, Inc.,
   2016 WL 6882832 (C.D. Cal. Nov. 22, 2016)................................................. 13

Andrulonis v. United States,
   724 F. Supp. 1421 (N.D.N.Y. 1989)....................................................... 11

Apple Computer, Inc. v. Microsoft Corp.,
   35 F.3d 1435 (9th Cir. 1994) ..............................................................8

Art Attacks Ink, LLC v. MGA Entm't Inc.,
   581 F.3d 1138 (9th Cir. 2009) .............................................................6

Basile v. Sony Pictures Entm't Inc.,
   2014 WL 12521344 (C.D. Cal. Aug. 19, 2014) ....................................3

Baxter v. MCA, Inc.,
   812 F.2d 421 (9th Cir. 1987) ...............................................................7

Berkic v. Crichton,
   761 F.2d 1289 (9th Cir. 1985) ............................................... 9, 10, 16

Bryant v. Avado Brands, Inc.,
   187 F.3d 1271 (11th Cir.1999) ............................................................4

Cavalier v. Random House, Inc.,
   297 F.3d 815 (9th Cir. 2002) ..............................................................9

Christianson v. West Pub. Co.,
   149 F.2d 202 (9th Cir. 1945) ..............................................................3

DC Comics v. Towle,
   802 F.3d 1012 (9th Cir. 2015) .......................................................... 17

DuckHole Inc. v. NBC Universal Media LLC,
   2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ......................................3

Gadh v. Spiegel,
   2014 WL 1778950 (C.D. Cal. Apr. 2, 2014) .......................................3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Gallagher v. Lions Gate Entm't Inc.,
    2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ............................................ 5, 9

Gold Glove Prods., LLC v. Handfield,
    648 Fed. Appx. 679 (9th Cir. 2016) ................................................................... 13

Herzog v. Castle Rock Entertainment,
    193 F.3d 1241 (11th Cir. 1999) ......................................................................... 10

Heusey v. Emmerich,
    2015 WL 12765115 (C.D. Cal. Apr. 9, 2015) ........................................... 3, 5, 8

Jason v. Fonda,
    526 F. Supp. 774 (C.D.Cal.1981), 698 F.2d 966 (9th Cir.1982) ........................6

Kouf v. Walt Disney Films & Television,
    16 F.3d 1042 (9th Cir. 1994) ........................................................................ 8, 10

Kullberg v. Pure Flix Entm't LLC,
    2016 WL 7324155 (C.D. Cal. Oct. 12, 2016) ................................................ 3, 16

Litchfield v. Spielberg,
    736 F.2d 1352 (9th Cir. 1984) .................................................................. 2, 9, 10

Olson v. NBC,
    855 F.2d 1446 (9th Cir. 1988) .............................................................. 13, 17, 20

Rice v. Fox Broad. Co.,
    330 F.3d 1170 (9th Cir. 2003) .............................................................................6

Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,
    562 F.2d 1157 (9th Cir. 1977) ........................................................................... 11

Silas v. Home Box Office, Inc.,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) ........................................... 3, 4, 13, 17

Stewart v. Wachowski,
    574 F. Supp. 2d 1074 (C.D. Cal. 2005) ...............................................................7

Three Boys Music Corp. v. Bolton,
    212 F.3d 477 (9th Cir. 2000) ......................................................................... 5, 6

Unicolors, Inc. v. Urban Outfitters, Inc.,
    __ F.3d__, 2017 WL 1208459 (9th Cir. Apr. 3, 2017).......................................7

iii

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Wages v. IRS,
    915 F.2d 1230 (9th Cir. 1990) ................................................................5

Weygand v. CBS Inc.,
    1997 WL 377980 (C.D. Cal. May 21, 1997) ........................................9

Wild v. NBC Universal, Inc.,
    788 F. Supp. 2d 1083 (C.D. Cal. 2011) ................................................3

Zella v. E.W. Scripps Co.,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ..................................... *passim*

**Statutes**

17 U.S.C. § 505 ....................................................................................... 21

**Other Authorities**

4 Nimmer on Copyright
    § 13.02[A] ..............................................................................................5
    § 13.02[B] ..............................................................................................7
    § 13.03[A][1][b] ................................................................................ 12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      SUMMARY OF ARGUMENT

Defendants Blumhouse Productions, LLC and Jeremy Slater submit this Reply in support of their Motion to dismiss Plaintiff's First Amended Complaint ("FAC") with prejudice.[1]   Nothing in Plaintiff's Opposition provides any basis for this lawsuit to proceed; to the contrary, it makes plain that Plaintiff cannot allege a cognizable copyright claim, and his lawsuit should be dismissed with prejudice.

First, Plaintiff's attempt to delay the ultimate dismissal of this lawsuit by claiming that dismissal is "premature" is baseless.  His Opposition simply ignores decades of authority that has uniformly recognized the propriety of a trial court dismissing a copyright claim under F.R.C.P. 12(b) where, as here, a comparison of the works at issue shows that there is no plausible basis for the infringement allegations.  See infra, Section II.

Second, Plaintiff's Opposition makes plain that he cannot allege facts sufficient to establish that Defendants had access to his Manuscript, as required to make out an infringement claim.  The FAC asserts Plaintiff sent the manuscript to various literary agents, but the correspondence he submitted with his Opposition (Dkt. 56-1) shows he never submitted it to any of the Defendants – or anyone plausibly alleged to be connected to any of the Defendants.  Moreover, Plaintiff's own exhibits show that the literary agents received only an abbreviated synopsis of the Manuscript or, at most, a single chapter – none of them was given the full

_____

[1] The Motion was brought on behalf of Blumhouse Productions, LLC (erroneously identified in the FAC as "Blumhouse Productions, a proprietorship") and Jeremy Slater.  Although none of the other defendants were served properly with the First Amended Complaint, Defendants Jason Blum, Jeanette Brill, Luke Dawson, Lions Gate Films, Inc., Robyn Marshall, Jimmy Miller, Rick Osako, and Cody Zweig have appeared and filed a notice of joinder in the Motion.  Dkt. No. 60.  The FAC fails as to all of these named defendants for the same reasons it fails as to defendants Blumhouse and Slater.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Manuscript, and none of them are alleged to have shared Plaintiff's material with any third party, let alone one of the Defendants.  Because there is no plausible allegation that Defendants accessed the Manuscript, the FAC fails to state a claim for infringement.[2]  See infra, Section III.

Third, and most significantly, Plaintiff fails to raise any serious argument that Defendants' Film is "substantially similar" to protectable expression found in his Manuscript.  Defendants' moving papers demonstrated the two works are entirely dissimilar with respect to all of the objective elements the Ninth Circuit considers in evaluating substantial similarity – plot, themes, dialogue, mood, setting, pace, characters, and sequence.  Plaintiff cannot (and does not) dispute this:  the Film is a fast-paced horror movie set in a present-day university laboratory, while the Manuscript is a sprawling murder mystery set in a fictional city in the future.

Instead, Plaintiff tries to ignore the relevant legal test applied in this Circuit, relying on a laundry list of 22 abstract, purported "similarities" between the works.  But the law is clear that such lists of "random similarities scattered throughout the works" are insufficient to support a claim of substantial similarity.  See Litchfield v. Spielberg, 736 F.2d 1352, 1356 (9th Cir. 1984).  In any event, Plaintiff's list consists entirely of (i) ideas, general plot lines and generic character attributes that are outside the scope of copyright protection, and (ii) expressive elements that are objectively dissimilar between the two works.  The Court needs only to look at the Film and the Manuscript to conclude that the two works are not similar at all, much less "substantially" so.  See Section IV, infra.  This cannot be fixed by any amendment, no matter how creatively Plaintiff might try to re-plead his case (for the third time).  His lawsuit should be dismissed with prejudice.

_____

   [2] Plaintiff's only other allegation about "access" is that the Manuscript was available for some undefined period of time on a self-publishing website, but he has not (and clearly cannot) allege that anyone purchased it, let alone that one of the Defendants did so, even though that information would be available to him.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.   COPYRIGHT INFRINGEMENT CLAIMS ARE SUBJECT TO DISMISSAL WITH PREJUDICE ON A RULE 12(B)(6) MOTION.

Plaintiff argues Defendants' Motion is premature and amounts to "improper summary judgment briefing."  Opposition Mem. (Dkt. No. 56, "Opp.") at 1, 2.  Both assertions are simply incorrect as a matter of law.  <u>First</u>, as discussed in the Motion, copyright infringement cases frequently are decided on Rule 12(b)(6) motions, and "[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." <u>Christianson v. West Pub. Co.</u>, 149 F.2d 202, 203 (9th Cir. 1945); <u>see</u> <u>also</u> Motion (Dkt. No. 51) at 8-9.  Innumerable courts have resolved copyright infringement cases by comparing the works at issue and deciding, based on their contents and other judicially noticeable facts, whether the plaintiff can plausibly allege substantial similarity.  <u>See</u>, <u>e.g.</u>, <u>Zella v. E.W. Scripps Co.</u>, 529 F. Supp. 2d 1124, 1128-30 (C.D. Cal. 2007); <u>Silas v. Home Box Office, Inc.</u>, 201 F. Supp. 3d 1158, 1168-71 (C.D. Cal. 2016); <u>Heusey v. Emmerich</u>, 2015 CV 14-06810-AB (EX), 2015 WL 12765115, at *3-*4 (C.D. Cal. Apr. 9, 2015).[3]  Plaintiff simply ignores this authority.

<u>Second</u>, Plaintiff also is incorrect in asserting that the Motion should be treated as one for summary judgment because Defendants submitted copies of the works at issue for the Court's review.  Where, as here, a complaint is based on a document that is not attached to the pleading, "the defendant may so attach the document … as

---

[3] <u>Accord</u>, <u>Wild v. NBC Universal, Inc.</u>, 788 F. Supp. 2d 1083, 1097 (C.D. Cal. 2011) (dismissing infringement claim under Rule 12(b)(6) after comparing works), <u>aff'd</u>, 513 Fed. Appx. 640 (9th Cir. 2013); <u>Kullberg v. Pure Flix Entm't LLC</u>, 2016 WL 7324155, at *2 (C.D. Cal. Oct. 12, 2016) (same); <u>Basile v. Sony Pictures Entm't Inc.</u>, 2014 WL 12521344, at *2 (C.D. Cal. Aug. 19, 2014) (same); <u>Gadh v. Spiegel</u>, 2014 WL 1778950, *3 n.2 (C.D. Cal. Apr. 2, 2014) (same, collecting cases); <u>DuckHole Inc. v. NBC Universal Media LLC</u>, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013).

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

one that could have or rather in fairness should have been attached to the complaint";
by doing so, the document "is considered part of the pleadings and thus may be
reviewed at the pleading stage without converting the motion into one for summary
judgment[.]" Zella, 529 F. Supp. 2d at 1131 n.6, quoting Bryant v. Avado Brands,
Inc., 187 F.3d 1271, 1280 n.16 (11th Cir.1999).  "[S]uch a document is not 'outside
the pleadings,' and thus it may be considered at the 12(b)(6) stage without a
transformation into the summary judgment posture[.]" Bryant, 187 F.2d at 1280 n.16;
see also Silas, 201 F. Supp. 3d at 1168 ("[w]hen specific documents are referenced in
a complaint, but not attached to the complaint, a defendant may introduce those
documents" on a Rule 12(b)(6) motion).  Here, the FAC identifies and refers to both
Plaintiff's Manuscript and Defendants' Film.  See FAC (Dkt. No. 43) ¶¶ 2, 3; Stahl
Decl. (Dkt. No. 51-2) Exs. 1, 2.  Both works thus are properly before the Court on
this Rule 12(b)(6) motion.[4]

The authenticity of the two works at issue is not in question.  Plaintiff notes
Defendants have requested a certified copy of his Manuscript from the Copyright
Office (Opp. at 3), but he does not dispute that Defendants submitted a true and
correct copy of the Manuscript with their Motion – nor could he, because it is the
very copy he provided to Defendants.  Stahl Decl. ¶ 2 & Ex. 1.  Indeed, Plaintiff
admits that he would have submitted this same document into the record if
Defendants had not done so first.  Opp. at 3:7-12.  In any case, the contents of the
Film and the Manuscript are subject to judicial notice.  See RJN (Dkt. No. 51-1), pp.
2-3.

---

[4] In any event, Plaintiff does not explain why treating this Motion as one for
summary judgment would make any difference to the result.  He identifies no
"genuine dispute as to any material fact," as required to preclude summary judgment.
Fed. R. Civ. P. 56(a).  He also has not claimed any discovery was necessary for him
to respond.  Fed. R. Civ. P. 56(d).  Nor could he make such a claim: the Motion is
directed to the contents of the works themselves, and can be adjudicated simply by
comparing their contents.

Finally, Plaintiff suggests the Court can allow a pleading "deficiency" to be cured by amendment.  Mot. at 2.  But this permissive rule of pleading does not apply where, as here, an amendment would be futile.  See Wages v. IRS, 915 F.2d 1230, 1235 (9th Cir. 1990).  Plaintiff already amended his complaint once; he offers no reason why a second amendment would "cure" the FAC's failure to state a plausible infringement claim.  The reason is plain:  he cannot amend around the deficiencies in the FAC because they are not mere pleading defects; the inherent defect is that the two works are not substantially similar – and no amount of pleading can change that fact.  When a copyright plaintiff "fails to establish substantial similarity, a court may grant a motion to dismiss with prejudice."  Heusey, 2015 WL 12765115, at *3; see Gallagher v. Lions Gate Entm't Inc., 2015 WL 12481504, at *2 (C.D. Cal. Sept. 11, 2015) (dismissal with prejudice is appropriate "when substantial similarity is absent after a review of the works at issue").  Accordingly, the appropriate procedure on this Motion is for the Court to compare the Manuscript and Film, and in doing so, the Court will determine that Plaintiff has failed to state a claim for infringement.

## III.   PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO SHOW DEFENDANTS HAD ACCESS TO HIS WORK.

Because Plaintiff has not alleged (and cannot allege) direct copying, he is required to show Defendants had "access" to his Manuscript.  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000).  Access cannot be shown by inference or conjecture.  Id. at 482.  A "bare possibility" of access is not sufficient; to the contrary, the plaintiff must allege that the defendants had a "reasonable opportunity" to view the allegedly infringed work.  Id., citing 4 Nimmer on Copyright § 13.02[A], at 13-19.  Plaintiff's claim that he sent his Manuscript to literary agents and publishers – without any suggestion it ever was sent to any Defendant, or to anyone with any plausible connection to Defendants – is inadequate to meet his burden of demonstrating that Defendants had a reasonable – or any – opportunity to access the Manuscript.  See Mot. at 7-8.

5

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiff's Opposition confirms his access claim is entirely conjectural.  His correspondence with various literary agents in 2006 and 2009 does not demonstrate access by Defendants.  Opp. Exhibit A (Dkt. 56-1).  There is no allegation that any of these literary agents had any connection whatsoever to any of the Defendants.  Moreover, the correspondence shows that Plaintiff did not even provide the complete Manuscript to any of the literary agents.[5]  There is suggestion that any of these literary agents requested the full Manuscript, or sent any of Plaintiff's material to any third party (much less to Defendants or any other movie producers).  Id.  Accordingly, Plaintiff has failed to meet his burden of plausibly alleging that Defendants had access to his work.

Plaintiff's only other argument is to assert that access can be assumed if the infringed work had "fame and/or wide dissemination."  Opp. at 5.  This rule does not help him.  Widespread dissemination may be "circumstantial evidence of access," Three Boys Music Corp., 212 F.3d at 482, but only if the work is ubiquitously available.  Courts have rejected this presumption of access even in cases where the allegedly infringed work was disseminated far more widely than Plaintiff's work purportedly was here.  See Rice v. Fox Broad. Co., 330 F.3d 1170, 1178 (9th Cir. 2003) (where allegedly infringed video "sold approximately 17,000 copies," it "cannot be considered widely disseminated" for purposes of inferring access); Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1144 (9th Cir. 2009) (sale of 2,000 t-shirts a year at trade show insufficient to establish more than a bare possibility of access); Jason v. Fonda, 526 F. Supp. 774, 776 (C.D.Cal.1981) (book sales of 2,000 copies nationwide and 700 copies in Southern California did not create circumstantial case of access), aff'd, 698 F.2d 966 (9th Cir.1982).  Under this

---

[5] In 2006, Plaintiff sent a description of the as-yet unfinished manuscript to various literary agents, but he did not send the actual Manuscript.  Exhibit A, Dkt. 56-1, at 1-13.  In 2009, Plaintiff sent proposals to additional literary agents, but these included only a synopsis and first chapter of the work.  Id. at 14-105.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

controlling authority, Plaintiff has not alleged sufficiently "widespread" dissemination to create a presumption of access.  He states the Manuscript was available for an unspecified period of time on a print-on-demand website – but he does not allege that there were <u>any</u> sales, much less "widespread" dissemination. Neither this failed attempt at self-publishing, or his mailings of portions of the Manuscript to a handful of literary agents with no connection to Defendants, demonstrate a plausible basis for assuming access via "widespread dissemination." FAC ¶¶ 24-25.

In a last attempt to meet his burden, Plaintiff alludes to the rule that copying may be found without proof of access when the works at issue are "strikingly similar."  Opp. at 6.  Although "a 'striking similarity' between the works may give rise to a permissible inference of copying," <u>Baxter v. MCA, Inc.</u>, 812 F.2d 421, 423 (9th Cir. 1987), this rule plainly does not apply here, because there is no allegation or suggestion that the two works at issue are strikingly similar (nor could such an allegation pass the smell test).  The standard for alleging striking similarity is far higher than "substantial" similarity, as when the works at issue are "<u>virtually identical.</u>"  <u>Unicolors, Inc. v. Urban Outfitters, Inc.</u>, __ F.3d__, 2017 WL 1208459, at *5 (9th Cir. Apr. 3, 2017) (emphasis added). As one court explained,  "[a]t base, 'striking similarity' simply means that, in human experience, it is virtually impossible that the two works could have been independently created."  <u>Stewart v. Wachowski</u>, 574 F. Supp. 2d 1074, 1101 (C.D. Cal. 2005), <u>quoting</u> <u>4 Nimmer on Copyright</u>, § 13.02[B] (2005).

Plaintiff does not allege the Film is strikingly similar to his Manuscript.  Nor could he do so, in light of the substantial dissimilarities apparent from the works, detailed in the Motion and below.[6]  Because Plaintiff has failed to allege one of the

_____

[6] Plaintiff also notes that "common errors" in two works can be probative of similarity, even absent evidence of access.  Opp. at 6.  This general point of law also is of no help to Plaintiff, however, because there is no allegation – nor could there be

requisite elements of a copyright claim – access – this lawsuit should be dismissed for this reason alone.

## IV.   THE WORKS AT ISSUE ARE NOT SUBSTANTIALLY SIMILAR

Plaintiff's lawsuit independently fails because he cannot establish that the two works contain protectable expression that is "substantially similar," as required to state a copyright infringement claim.  For this additional reason, his lawsuit should be dismissed with prejudice.

### A.   Substantial Similarity Requires a Comparison of Extrinsic Elements.

Defendants' Motion set out the well-established Ninth Circuit test for evaluating substantial similarity, including on Rule 12(b)(6) motions, and explained in detail how its application here establishes the complete absence of protectable similarity.  Mot. at 10-22.  As previously noted, courts evaluating substantial similarity on a motion to dismiss must focus on the works' "extrinsic," objective criteria.  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994); Heusey, 2015 WL 12765115, at *3.  After filtering out unprotected ideas, stock scenes and other generic and unprotectable elements, the court evaluates whether there are articulable similarities between specific, objective criteria – namely, the "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works."  Kouf v. Walt Disney Films & Television, 16 F.3d 1042, 1045 (9th Cir. 1994).

The Motion addressed all of these elements, and demonstrated, for each element, that the Manuscript and Film were utterly dissimilar.  Mot. 14-22.  Plaintiff has no answer – because the differences are irrefutable from the content of the works themselves.

---

any allegation – that the Film contains any "error" that also appears in the Manuscript.  This is not a "common error" case.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.      A List of Abstract or Random Items Is Inadequate To Establish "Substantial Similarity" Between Two Works.**

Ignoring the relevant authority and argument, Plaintiff offers a 3-1/2-page list of isolated examples of what he claims are "similarities" between his Manuscript and the Film.  Opp. at 8-11.  Not surprisingly, courts considering alleged similarities in copyright cases have dealt dismissively with this type of contrived list, particularly where – as here – the "list" disregards obvious differences in the two works' plot, characters, setting and other objective elements.

As the Ninth Circuit has explained, lists like the one offered by Plaintiff are "inherently subjective and unreliable," particularly where "the list emphasizes random similarities scattered throughout the works." Litchfield, 736 F.2d 1352, 1356 (9th Cir. 1984); accord Cavalier v. Random House, Inc., 297 F.3d 815, 825 (9th Cir. 2002).  Such lists are even less relevant when random similarities are drawn from works of a length comparable to those at issue here.  Gallagher, 2015 WL 12481504, at *14 (Litchfield argument "is even stronger in this case because the [33] similarities are drawn from a 302-page book and a 90-minute film"); see also Zella, 529 F. Supp. 2d. at 1138 (citing cases).  The skepticism shown by these courts is rooted in the objective nature of the extrinsic test for substantial similarity: because the test requires a comparison of "the actual concrete elements that make up the total sequence of events and the relationships between the characters" (Berkic v. Crichton, 761 F.2d 1289, 1292 (9th Cir. 1985)), the "juxtaposition of scenes occurring at different points in the two works does not demonstrate substantial similarity." Weygand v. CBS Inc., 1997 WL 377980, at *7 (C.D. Cal. May 21, 1997).

Accordingly, courts readily dispose of copyright claims where the alleged laundry list of supposed similarities is limited to abstract, unprotected ideas, stock plot elements, or generic characters traits, as it is here.  For example, the Eleventh Circuit affirmed dismissal of a copyright action notwithstanding plaintiff's allegations that the two works both:

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

use flashback sequences to shift from the present to the past; take place in rural, "redneck" towns with histories of racial tension that are dominated by corrupt public officials; make reference to land obtained as a result of massacres; have powerful citizens who conspire to hide the truth of the murders until their secrets are uncovered by the film's protagonists; use the device that deaths were due to foul play instead of natural causes; use the consequences of a prank to set in motion a chain of events and revelations central to the secrets of the town and its residents; recount the massacre of Indians via flashbacks of the witnesses; use a key-ring/ring to identify the victims…mention black Seminole Indians; have evil sheriffs who blackmail townspeople and are killed; have prominent businesswomen who harbor secrets central to the plot; and have old-timers who help solve the mysteries by telling the protagonists about the town's history.

Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1257 (11th Cir. 1999).[7]

Plaintiff's list of supposed "similarities" extracted from the Film and Manuscript is even less persuasive than the one rejected by the 11th Circuit in Herzog, and it cannot substitute for the comparison of the respective objective elements required by this Circuit's extrinsic similarity test.

---

[7] See also, e.g., Berkic, 761 F.2d at 1293 (insufficient similarity even though both works "deal with criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants," who are ultimately exposed by a "young professional who courageously investigates" the criminal organization; "General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind."); Kouf, 16 F.3d 1042 (insufficient similarity where both screenplays featured individuals using scientific formulas which shrink people to miniscule proportions); Litchfield, 736 F.2d at 1354-55 (insufficient similarity where both works concerned alien with extraordinary powers who befriended child, was welcomed into family, adopted human habits, thwarted evil-doers, and then returned to his own planet); Zella, 529 F. Supp. 2d at 1138-39 (dismissing for lack of substantial similarity between two cooking shows that both involved celebrities engaged in a personal setting).

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4823-2412-1671v.5 0103245-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## C.   Plaintiffs' List Fails To Identify Any Protectable Similarities Between The Film and The Manuscript.

None of the items on Plaintiff's 22-point list amounts to actionable similarity. Each of Plaintiff's three categories of listed similarities will be addressed in turn.

**Alleged "Direct" Similarities**:

1.   *"[T]he depicted scientific/medical research bears the code name: The Lazarus Project"* (Opp. at 8).

According to the New Testament, Lazarus was miraculously raised from the dead by Jesus. See RJN 3. Thus, as explained in the Motion, there is nothing surprising or original about invoking the name "Lazarus" to describe a work involving resurrection – a topic that even Plaintiff concedes is common in literature and cinema. Mot. at 12-13; Opp. at 7. Numerous expressive works about resurrection themes are named after this biblical figure (including a 2009 novel entitled "The Lazarus Project") and nearly 700 copyrighted works contain "Lazarus" in their title. See RJN 5 & p. 5; Stahl Decl. Ex. 5. In fact, the "Lazarus Phenomenon" is the scientific/medical term used to describe instances in which the clinically dead display spontaneous signs of life. RJN 4. This alleged similarity is not a protectable element of expression, and is meaningless here.

2.   *"Of which, is first conducted upon a number of lab animals."*

Plaintiff cannot claim a monopoly on the idea of performing scientific experiments on animals, which obviously predates his Manuscript. See, e.g., Andrulonis v. United States, 724 F. Supp. 1421, 1438-39 (N.D.N.Y. 1989) (describing Louis Pasteur's research on dogs in late nineteenth century). Copyright law protects only a particular expression of an idea, not the idea itself. Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1163 (9th Cir. 1977). Moreover, the Manuscript and Film do not express the idea of animal lab experiments in the same way. In fact, the Manuscript barely mentions animal experimentation, referring to it just once, in a single, non-descriptive sentence:

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"Initial test in animals proved promising, and the next phase of experimentation on a more sophisticated specimen was imminent."  Stahl Decl. Ex. 1 (Manuscript) p. 4.  In contrast, the Film opens with a vivid depiction of a failed attempt to reanimate a pig, and includes two dramatic scenes showing attempts to bring dogs back to life.  Id. Ex. 2 (Film) at 1:05, 13:55, 32:05.  The concrete depictions of animal experimentation in the Film are objectively dissimilar from that in the Manuscript.

      3.    *"The technology/methodology used to conduct the process of resurrecting the deceased."*

Although both works include a fictional technology for reanimating the dead, the descriptions of the technology in each work are completely <u>dissimilar</u>.  As Defendants previously explained, the Film describes the reanimation process as "bonding fast growth b-cell tumors which sped up the nerve fiber regrowth, creating the 'Lazarus serum,'" which is then injected into the subject's brain with a stimulating "pulsar" – but the process only works after the researchers realize they must introduce "a potassium-selective insulator into the serum."  <u>Id.</u>, 4:40, 11:50.  In the Manuscript, reanimation involves implanting a "bio-silicon micro-processor" chips containing uranium, which leaves a tattoo-like marking on the subject's earlobe, making it possible to identify the reanimated Necrosapiens.  Stahl Decl. Ex. 1 (Manuscript), pp. 43-44; Mot. at 16.  Plaintiff has no answer.

      4.    *"The 'What happens beyond death…?' theme becomes, great in part, motivation behind the scientist's research/experimentation"*; and

      5.    *An ambiguously depicted heaven/hell scenario is experienced/reported by those who are resurrected.*

The fact that the Manuscript and Film both address questions of  heaven and hell and "what happens after death?" is hardly relevant in evaluating similarity.  <u>First</u>, the extrinsic test for substantial similarity requires plaintiff to show "concrete" similarities in specifically defined objective details of the work.  <u>Zella</u>, 529 F. Supp. 2d at 1135, <u>quoting</u> <u>4 Nimmer on Copyright</u> § 13.03[A][1][b], at 13–42 (2003).

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

General plot ideas, or "themes that flow necessarily from a basic premise," are not protected.  Silas, 201 F. Supp. 3d at 1180, citing Olson v. NBC, 855 F.2d 1446, 1451 (9th Cir. 1988).  Here, questions about the afterlife flow logically and necessarily from the basic, unprotectable premise of the works; any book or movie premised on the possibility of bringing the dead back to life naturally will include some discussion about what happens in the process.

Second, this court and other courts routinely have held that copyright does not protect commonplace and general themes; abstract notions like "[w]hat happens beyond death?" or "what is heaven and hell?" are no more concrete than unprotected themes such as "knowing when to let love go" (see 8th Wonder Entm't, LLC v. Viacom Int'l, Inc., 2016 WL 6882832, at *6 (C.D. Cal. Nov. 22, 2016)) or "the importance of family" (see Gold Glove Prods., LLC v. Handfield, 648 Fed. Appx. 679, 680-81 (9th Cir. 2016).  Such themes are not protectable.

Third, the Film and Manuscript address the question of "what happens beyond death" and the "heaven/hell scenario" in dramatically different ways.  For example, the Film contains a debate over whether the "white light" seen at death is due to a biochemical compound called DMT, or the spiritual passage of the soul.  Stahl Decl. Ex. 2 (Film), at 18:34-20:10.  Zoe, the Film's resurrected character, later learns to her horror that what happens after death is involuntary damnation:  "You relive the worst moment of your life over and over and you can never wake up."  Id. at 48:10.

In contrast, the Manuscript depicts the dead as being given a choice, depicted in dream sequences as two staircases:

"So, for the sake of argument," Maddox starts to say, "one can assume that the doors upstairs and downstairs respectively associate with heaven and hell?  Samuel chose the upper door becoming essentially a martyr, whereas Joseph went downstairs.  He got the success that eluded him, but at the cost of his soul?"

"Heaven, hell. Good, bad…. A choice is a choice."

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Stahl Decl. Ex. 1 (Manuscript) p. 98.  The Film has no remotely similar description or depiction.

> 6.    *"The female principal is plagued with horrible nightmares surrounding and/or associated with her job."*

As discussed in the Motion and not addressed by Plaintiff, the fact both works have dream sequences is irrelevant to the "similarity" analysis, because dreams are a commonplace narrative feature and too generic to qualify for copyright protection. Mot. 17; RJN 8.  Plaintiff also ignores the fact that the dreams of the lead female characters in each work have <u>no</u> objective similarities – they differ in terms of plot, sequence, setting, mood, theme and dialog.

In the Film, Zoe has a recurring nightmare about a fatal apartment fire she caused while playing with matches as a young girl.  The dream is horrifically vivid and explicit:  the viewer sees the young Zoe in the smoky hallway, watching as her trapped neighbors pound on an apartment door in a futile attempt to escape.  Upon Zoe's death, she bitterly realizes there will be no redemption for her childhood acts, and she is condemned to relive the event for eternity.  Stahl Decl. Ex. 2 (Film) at 9:43, 39:57, 47:25, 49:40, 54:44, 1:12:30; <u>id</u> at 57:40 ("I spent my whole life trying to make up for one mistake.  I did everything right and I still ended up in hell.").

In the Manuscript, Detective Ellion also has a dream, but it is not recurring, and it is nothing like Zoe's nightmare.  It starts as an ethereal vision of a woman sitting by a lake; the scene shifts multiple times, and Ellion eventually realizes the woman is her mother.  She witnesses her mother's gradual decline and eventual death from Parkinson's disease, and relives her estrangement from her sister over the family's decision to not have her resurrected.  Stahl Decl. Ex. 1, pp. 82-84.  In no respect can the two dreams be considered "similar," nor is the inclusion of a "dream" in an expressive work a unique element that is relevant to demonstrating similarity of protectable expression.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

7.  *"The antagonist turns out to be one who has been adversely affected by the process of resurrection."*;

8.  *"The antagonist, in effect, has gone on an indiscriminate killing spree of victims from a diverse background"*; and

9.  *"The 'twist' ending holds the same measure of ambiguity surrounding the killer."*

All three of these alleged similarities are contrived, and completely disregard the actual content of the two works at issue.

As explained previously, the "adverse effects" of the resurrection process in the Film and the Manuscript are completely different. In Plaintiff's work, resurrection has become an everyday occurrence: most Necrosapiens appear to live normal lives, apart from an occasional side effect from repeated resurrections ("soul flux") that can alter their personality, usually to a minor degree. See Mot. at 5. The Manuscript does not reveal whether the "antagonist" – the serial killer – was or was not "adversely affected by the process of resurrection." In fact, the Manuscript does not reveal anything about his motives, identity, or anything else about him, except to disclose (in the final sentence of the work) that he is a Necrosapien.

In contrast, the Film's antagonist, Zoe, suffers horrific effects immediately after her resurrection: her eyes turn inky black; she periodically takes on a deteriorated, zombie-like appearance and then regenerates; and she develops the power to read minds, move objects, and levitate. See Mot. at 6-7. Nothing similar is described in the Manuscript.

Plaintiff's list likewise mischaracterizes the "killing sprees" in the respective works. In the Manuscript, an unidentified serial killer strikes random victims in a "methodical" manner. Stahl Decl. Ex. 1 (Manuscript) p. 16. The victims appear to have nothing in common except that they are all Necrosapiens. In the Film, Zoe kills her former colleagues, friends, and lovers by using her supernatural powers in vicious and creative ways.

15

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Finally, Plaintiff's claim that an ambiguity in the "plot twist" for each work simply mischaracterizes their content.  In the Film, there is <u>zero</u> ambiguity about the killer or her motives:  the viewer knows from the first death that the killer is the resuscitated Zoe.  Her motives are also fully disclosed:  she kills all of her colleagues because she realizes they regret bringing her back to life.  <u>See</u>, <u>e.g.</u>, Stahl Decl. Ex. 2 (Film) at 58:40.

In contrast, the purported "twist" ending in the Manuscript is the revelation, in its final sentence, that the serial killer of Necrosapiens is also a Necrosapien.  His motivation is never explained.  <u>Id.</u> Ex. 1 (Manuscript) at 146.

**<u>Alleged "General" Similarities</u>**:

Plaintiff's list of so-called "General Similarities" (Opp. at 8-9) fares no better.  <u>All</u> of the listed items are unprotected, under the rule that "general plot ideas are not protected by copyright law[.]"  <u>Berkic</u>, 761 F.2d at 1293.

For example, Plaintiff asserts as a "similarity" that both works discuss religious objections to the resurrection project.  Opp. at 8-9.  But as this Court recently recognized, "the general premise" of an authority figure "challenging a Christian student's religious beliefs" is an insufficient basis to allege substantial similarity where – as here, the works "tell materially different stories."  <u>Kullberg v. Pure Flix Entm't LLC</u>, 2016 WL 7324155, at *2 (C.D. Cal. Oct. 12, 2016).

Plaintiff also asserts similarities based on characters continuing to do something after being "explicitly directed" to stop.  Mot. at 9.  But this "similarity" is found in countless narrative works, from <u>The Oedipus Plays</u> to "Beverly Hills Cop" to <u>Harry Potter</u>.  RJN 9.

The few remaining items on Plaintiff's "General Similarities" list (including the characters' supposed "shift" in motivations, the seizure of information, and the "sacrifice" of a character, Opp. at 9) likewise fail, because each one of these items relies on sweeping generalities, and simply ignores the complete differences in the specific elements the Court must consider in applying the extrinsic test.

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4823-2412-1671v.5 0103245-000004

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Alleged "Character" Similarities**

As with his other "lists," Plaintiff's list of alleged "Character/Characterization Similarities" (Opp. at 10-11) fails to allege a plausible claim of substantial similarity. As a matter of law, characters are not protectable by copyright unless they are "especially distinctive," such as Superman or the characters in "Star Wars." Olson, 855 F.2d at 1452; DC Comics v. Towle, 802 F.3d 1012, 1021 (9th Cir. 2015). Plaintiff does not identify any "especially distinctive" characteristics that are subject to copyright protection. Moreover, even if such distinctive characteristics existed – which they do not – Plaintiff could not and has not alleged the "very high degree of similarity" between any character in the Manuscript and any character in the Film, as required to show protectable character similarity. Silas, 201 F. Supp. 3d at 1177. Instead, he tries to hedge his argument by alleging similarities based on contorted "amalgams," "combinations," or "splintered versions" of two or more characters in the Manuscript (Opp. at 10) – a tacit admission that none of his characters, standing alone, is "especially distinctive," and none of them are substantially similar to any one character in the Film.

To the contrary, a simple review of the works demonstrates that each of the allegedly infringing characters in the Film differs from the characters in the Manuscript in specific, concrete ways – such as occupation, personality, and appearance . See Silas, 201 F. Supp. 3d at 1177, 1178-79 (substantial similarity defeated by fact one character was an active professional football player who owns a nightclub, and the other was a retired professional football player who worked for a financial management company).

Taking each character on Plaintiff's list in turn:

Frank:

Plaintiff alleges Frank, the lead male character in the Film, is an "amalgam" of three characters in the Manuscript: Detective Dobbs, the billionaire Thomas Fairbanks, and a Dr. McInson, a medical doctor who appears on a cable news

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

program in one brief passage that offers no background on his character.  Stahl Decl. Ex. 1 (Manuscript) p. 4, 25.  None of these Manuscript characters is sufficiently "distinctive" to be eligible for copyright protection.  But even if they were, Plaintiff does not, and cannot, explain what the substantial similarities actually are.  Frank is a researcher – not a detective, billionaire philanthropist, or cable news talking head. He differs substantially from Dobbs, the Manuscript's lead character.  Dobbs is a rumpled and jaded 40-something police veteran with a drinking problem and no apparent love interest in the workplace.  Manuscript, Ex. 1, pp. 8, 59.  Frank is an ambitious university scientist in a romantic relationship with his colleague, Zoe.

Zoe:

Plaintiff claims Zoe, the Film's female lead, is a "combination" of Detective Ellion and two minor female characters in the Manuscript who are not sufficiently distinctive to be protectable.  His attempts to assert similarities is remarkably contorted:  for example, he claims Ellion's "interpersonal/working relationship with Dobbs is foundationally similar to Frank and Zoe" (Opp. at 10), which is manifestly false:  the relationships have nothing in common other than one is male and one is female – a "similarity" so abstract and general that it could describe innumerable works.

In addition, Zoe is objectively dissimilar to Ellion:  Zoe is a medical researcher, not a detective, and she is engaged to her male lead (unlike Ellion, who has no romantic interest in Frank).  Zoe's role in the Film's plot is also the polar opposite of Ellion's in the Manuscript:  Zoe ultimately murders all of her colleagues, while Ellion sacrifices herself to apprehend the killer.[8]

_____

[8] Plaintiff also alleges Zoe and the Manuscript's unidentified "Killer" share "some of the same frightening physical traits, ominous disposition, murderous intent, etc."  Opp. at 11.  But the book reveals nothing about the Killer's physical traits or disposition, other than that he is a Necrosapien.  And while both he and Zoe are murderers, the killings occur in entirely different sequences and settings, as described previously.  In any event, the concept that "killers" in two different works might both

1

Clay and Niko:

2

Plaintiff claims these two characters, who work with Frank and Zoe in the lab,

3

are similar to one character in the Manuscript:  forensic specialist Sean Brindle.  But

4

again, the characters are objectively dissimilar.  Among other things, the occupations

5

are different:  Clay and Niko do not work for law enforcement; they are medical

6

researchers.  Brindle is a "recluse," Stahl Ex. 1 (Manuscript) at 17, whereas Clay and

7

Niko appear to be sociable.  Brindle has a distinguishing characteristic: he lost his

8

ability to speak as a result of a laryngeal disease, and communicates through a

9

computerized box.  Id. at 18.  That is not true of either Clay or Niko.  And although

10

Plaintiff claims "Brindle shares the same longing for Ellion as Niko does for Zoe"

11

(Opp. at 10), Niko rejects Zoe's post-mortem advances, whereas Brindle has an affair

12

with Ellion.  Ex. 1 (Manuscript) at 93-96.

13

Eva:

14

Plaintiff alleges the Film's Eva is similar to Maddox Lewis.  But they are

15

objectively dissimilar.  Eva is a pretty, young, female graduate student who is

16

making a documentary about the project.  See Stahl Ex. 2 (Film) at 5:56 (referring to

17

Eva as "documentary girl").  Maddox is a male newspaper reporter.

18

Dean Dailey and Mr. Wallace:

19

These are two minor characters who appear in the Film for in one scene each –

20

the Dean for 78 seconds, and Mr. Wallace for less than one minute.  Id. 25:00, 27:00.

21

(Plaintiff  incorrectly identifies Dailey as the university "President," and male.)

22

Plaintiff suggests the dean is similar to Captain Houston, who supervises Dobbs and

23

Ellion in the Manuscript, and that Wallace is similar to FBI agent Allison Ponte.  But

24

the only alleged similarity is that the Dean and Wallace in the Film, and the captain

25

and FBI Agent in the Manuscript, are involved in ordering the lead characters to

26

27

be "frightening" or "murderous" is hardly a matter of note; it is the kind of trait that

28

naturally flows from the character and is irrelevant to evaluating similarity.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

cease their activities (and are subsequently disobeyed).  As noted above, this narrative element is generic and common to countless works.  RJN 9.  Dean Daily and Captain Houston differ in gender and occupation; so do Wallace and Agent Ponte.  There are no apparent similarities, much less the "high degree" required to show actionable character copying.

***

In sum, Plaintiff's random list of supposed "similarities" cannot replace the necessary comparison of the works with respect to the specific elements covered by the extrinsic test.  Defendants' Motion details the vast objective differences between the two works.  The plots, sequence, and pace of the works differ:  the Manuscript is a murder mystery taking place over several weeks or months in a fictional city, in a future where human resurrection has become common.  The Film take place over two days, in a present-day university laboratory where the possibility of resurrection is first being attempted, to disastrous effect.  See Mot. at 14-18.  The theme and mood differ:  the Manuscript is a typical murder mystery, focused on a search for clues leading to the identity of a killer.  The Film is a classic horror film, where a dangerous experiment unleashes supernatural powers that doom the main characters to a gruesome fate.  Id. 19-20.  There are no allegations of any similarity in dialogue, must less the "extended similarity of dialogue" necessary to satisfy the extrinsic similarity test.  See Olson, 855 F.2d at 1450; Mot. at 20.  And none of the Film's characters bears any actionable resemblance to any character in the Manuscript, much less the "very high degree of similarity" in distinctive elements required to allege infringement.  Mot. at 20-22.  In short, were it not for the idea of "resurrection," Plaintiff undoubtedly would not have brought this lawsuit.  But the creation of two works that address resurrection – in very different ways – does not give him any basis for pursuing his meritless copyright claim.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# V.   CONCLUSION

The Film is exceedingly dissimilar from the Manuscript with respect to every extrinsic element relevant to the substantial similarity test.  Plaintiff's Opposition fails to demonstrate otherwise – in fact, it confirms that his claim is entirely baseless. Because a comparison of the works establishes that Plaintiff cannot state a claim for copyright infringement, this Court should dismiss Plaintiff's Amended Complaint with prejudice, and should award Defendants their costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505, in an amount to be determined on a subsequent motion.

DATED:  April 24, 2017

DAVIS  WRIGHT  TREMAINE  LLP
KELLI L. SAGER
ERIC M. STAHL
DIANA PALACIOS


By:_____ */s/ Kelli L. Sager*_____
Kelli L. Sager
Attorneys for Defendants

DEFENDANTS' REPLY ISO MOTION TO DISMISS
4823-2412-1671v.5 0103245-000004

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899